JOHN DALTON et al., Appellants, v. MARGARET DALTON et al.,
                              . Appellees.

**DESCENT AND DISTRIBUTION:** Homestead Incumbrance Payable
1    from General Assets. The right of a widow, to whom the home-
     stead has been assigned as part of her one-third share, to de-
     mand that homestead incumbrances on which she is not person-
     ally liable be discharged by the remaining two-thirds solvent
     part of the estate, is not waived by the act of the widow in re-
     questing the referee in partition to sell the homestead, and in
     purchasing the same at such sale, *when the court had never or-*
     *dered such sale.*

**PARTITION:** Construction of Decree. A decree in partition of
2    homestead and non-homestead property, which decree specifically
     sets aside the homestead to a widow, as per her application,
     and then orders a sale of "said premises," will not be construed
     as ordering a sale of the homestead.

**PARTITION:** Value of Homestead Set Off to Widow. The setting
3    aside of the homestead to the widow, in accordance with her de-
     mand, necessarily works the effect, in partition, of requiring the
     court, in some proper manner, to determine the fair value of
     the homestead, and to charge such amount against her one-third
     share.

*Appeal from Cherokee District Court.*—W. D. BOIES, Judge.

SEPTEMBER 30, 1918.

APPEAL by plaintiffs from an order overruling a de-
murrer to the answer of defendant Margaret Dalton.—*Af-*
*firmed.*

   *Molyneux & Maher,* for appellants.

   *Shull, Gill, Sammis & Stilwill,* for appellees.

LADD, J.—James Dalton died intestate, October 24, 1914,
seized of a house and lot in Le Mars and a farm in Cher-
okee County. A widow, Margaret, and nine children sur-

**1. DESCENT AND DISTRIBUTION: homestead incumbrance payable from general assets.** vived him. Suit in partition was begun by the children other than Helen, who was the only child by the surviving widow, and, in answer filed, the widow pleaded that the house and lot constituted the homestead of herself and decedent; that it was acquired subject to a mortgage of $2,000, which had not been satisfied; that the property of the estate, other than the homestead, was adequate to pay said mortgage; that she was entitled to have her distributive share of the estate set off so as to include the dwelling and lot in Le Mars, the same having been the homestead of herself and decedent; and she prayed "the court that it order that said Lot 3, Block 90, Seventh Addition to Le Mars, Iowa, be not sold, but that it be set apart to her as a part of her distributive share, and that referees may be appointed to appraise the said lot and the reasonable value of the interest which the said James Dalton, the deceased, had in said lot over and above the said mortgage incumbrance thereon."

A demurrer to this answer was overruled, and, as plaintiffs elected to stand on the ruling, the court entered a decree defining shares of the several parties in the respective properties, describing each, and with this additional:

"The court further finds that the said Margaret Dalton is entitled to have Lot No. 3, Block 90, in the Seventh Addition to the city of Le Mars, Iowa, set apart to her as a part of her share in the said estate. It is now therefore ordered, adjudged, and decreed by the court that the titles of the said parties in and to the said premises be and the same are hereby established and confirmed in them, and that the said premises are partitioned by a sale thereof; that Molyneux & Maher, attorneys for the plaintiffs, be allowed the statutory fees, which, with other costs, including the mortgages of record, shall be a lien upon the several interests in proportion to their interests; and W. L.

Gund is appointed as sole referee to make a sale of said premises at either public or private sale, and is hereby authorized to pay the mortgage against the farm which is located in Cherokee County, and to pay into the hands of the clerk of the district court the amount of the mortgage encumbrance against the homestead, and to divide the balance realized to the several owners in proportion to their separate and distinct shares. It is further ordered that the said premises be appraised before the sale by James Collins, James Crangle, and Thomas E. Herbert, who are hereby appointed appraisers; and the referee is directed, before making the sale, to execute a bond in the sum of $70,000, the same to be approved by the clerk of the district court."

The appraisers qualified, and, after fixing the value of the farm, appraised the house and lot at $4,100. The referee duly advertised and subsequently sold at public auction the several tracts, including the house and lot in Le Mars, the latter being bid in by the widow at $3,888. The court confirmed this sale as reported by the referee, and in so doing expressly found "that it is the reasonable value of said premises, and that it is desirable to complete the said sale." A deed was executed accordingly, with the approval of the court. Plaintiffs appealed from the ruling on the demurrer, and the order thereon was affirmed in *Dalton v. Dalton,* 178 Iowa 508. Thereafter, on January 8, 1917, the children, other than Helen, filed a supplemental petition, reciting the foregoing facts and, in addition thereto, alleging that "the widow, Margaret Dalton, appeared [at the sale on March 2, 1916], and asked that Lot 3 [the homestead] be sold to the highest bidder at public sale on said date;" and that the sale was at her instance; and that, owing to such facts:

"The defendant Margaret Dalton is not entitled to the relief demanded in the prayer of her answer, as filed on the 7th day of September, 1915, in that she did not take the

property described as Lot 3 in Block 90, in the Seventh Addition to Le Mars, Iowa, as the widow of the said James Dalton, deceased, but took it as a purchaser at public sale, and therefore is not entitled to have the said mortgage, amounting to the sum of $2,000, paid as a general debt of the estate, or by the two-thirds interest in the estate; that the said Margaret Dalton did not take the title to Lot 3 in Block 90 as the surviving spouse, or because it was the homestead of the deceased, but purchased the same at public sale; that, when said Margaret Dalton elected to become a bidder on said property, and finally purchased the same at public sale, as described, she waived any and all right she might have had to compel the two-thirds interest to pay the said mortgage out of their share of the estate, or any right she may have had to take the homestead free from the debt of the said mortgage; and because of the facts and occurrences which occurred subsequent to the filing of the answer of the defendant Margaret Dalton, and the submission of the demurrer, the defendant is not entitled to the relief prayed for in her answer, and it would be unfair and inequitable to compel the heirs holding a two-thirds interest in the said estate to pay the mortgage against the said property after the widow had waived any right that she might have had to compel the payment thereof by purchasing the identical property at public sale, and which said property was offered for sale on the said date because of the request made by her personally and by her, through her attorney, and after she had been informed that she would waive any and all right which she might have to compel the payment of the mortgage if she became a purchaser."

The prayer was that the referee be directed to charge the $3,888 bid for the house and lot to the distributive share of the widow, and that the mortgage of $2,000 be paid from the funds of the estate. The answer of the widow contains little else than a restatement of the record as recited; and

to this a demurrer was overruled, and, as plaintiffs elected to stand on the ruling, judgment was entered dismissing the petition. The appeal is from this ruling.

Appellants contend that the widow, by requesting the referee to sell the house and lot, and in bidding the property in, became a purchaser at the sale, and waived all claim to it as a homestead by virtue of being surviving spouse of decedent, and to having the homestead protected by being included in her distributive share, and to the satisfaction of the encumbrance thereon from the two thirds of the estate belonging to the heirs. Whether this might have been the result had the sale by the referee been valid, we need not determine. The trouble with this contention lies in the assumption that a sale of this property was ordered. The record is to the contrary. In the widow's answer to the petition in partition, she alleged the homestead character of the house and lot, the encumbrance thereon, and asked that "it be not so sold, but that it be set apart to her as a part of her distributive share, and that referees be appointed to appraise the said lot and the reasonable value of the interest which the said James Dalton, the deceased, had in said lot over and above the mortgage encumbrance thereof." A general demurrer to this answer was overruled; and, as the petitioners elected to stand on the ruling, decree was entered accordingly. Therein, each of the children was decreed to own 2/27 of all the property, and the widow, 1/3, and "that the said Margaret Dalton is entitled to have Lot No. 3, Block 90, in the Seventh Addition to the city of Le Mars, Iowa, set apart to her as a part of her share in the said estate." Up to this point, the respective rights of the parties are defined. Then follows the adjudication:

"It is now, therefore, ordered, adjudicated, and decreed by the court, that the titles of the said parties in and to said premises be and the same are hereby established and

<div style="margin-left:2em">2. PARTITION: construction of decree.</div>

confirmed in them, and that the said premises are partitioned by a sale thereof."

Plainly enough, this establishes the title to their respective shares, and orders partition by sale; but not of that already set apart to the widow. The decree must be construed in its entirety; and it would be absurd to declare the widow's right to the homestead as such, and, immediately following, order its sale. Section 3367 of the Code provides:

"The distributive share of the survivor shall be set off so as to include the ordinary dwelling house given by law to the homestead, or so much thereof as will be equal to the share allotted to her by the last section, unless she prefers a different arrangement; but no such arrangement shall be permitted unless there be sufficient property remaining to pay the debts of the decedents."

In partition proceedings, "for good and sufficient reasons appearing to the court, the referees may be directed to allot particular portions of the land to particular individuals." Section 4256, Code. The existence

3. PARTITION: value of homestead set off to widow.

of a homestead right will justify such a decree. *Thorn v. Thorn,* 14 Iowa 49. The widow, in such a case as that before us, is entitled to the homestead for use and occupancy, and not merely to the proceeds derived from a sale thereof. Construing the decree in the light of these statutes, there can be no doubt that it first found the widow's right to have the homestead set apart to her, in response to the prayer of her answer, and in harmony with the ruling on the demurrer, and then directed the sale of lands other than that segregated to the widow, and that this might be done by the referees appointed to partition. Referees are required to report to the court, and such report must be in writing, signed by them, and must describe the respective shares with reasonable particularity, and be accompanied by a plat of the premises, and must allot the shares to their several owners.

This, however, should not be construed as exclusive; for any method, as by appraisers, with the approval of the court, would seem warranted, provided the value is found by the court to be correct. Lands are ordered to be appraised, but no reference to the appraisal of the homestead is to be found in the decree. Only "said premises" to be sold are to be appraised; and, in undertaking to appraise the homestead, the appraisers acted without authority, as did the referee in advertising and attempting to sell the same. The mere request of the widow that this be done did not confer on him power so to do, nor did it waive her right to the homestead. Whether, had a sale been made to a stranger, she might have been estopped by such request from questioning its validity, is another question. What occurred in the way of advertising it and putting it up at auction was an idle ceremony, binding upon no one. The court found the reasonable value of the homestead to be $3,888, and charged the same to the widow's one-third interest in the estate. Neither party questioned the accuracy of this estimate. For this reason, it is not necessary to inquire into the manner of ascertaining the amount. The statutes do not point out how the reasonable value of "particular portions of land" allotted to particular persons shall be ascertained, though this is fairly to be implied. What we have said disposes of the several contentions of appellants, and the order overruling the demurrer to the supplemental petition is— *Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.